**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| THE HANOVER INSURANCE CO., | | |
| | * | |
| **Plaintiff,** | * | **Case No.: GJH-13-472** |
| v. | | |
| | * | |
| PERSAUD COMPANIES, INC., ET AL., | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

This Memorandum Opinion and accompanying Order address Plaintiff Hanover Insurance Company's ("Hanover's") Motion for Default Judgment. *See* ECF No. 49. Defendants Persaud Companies, Inc. ("Persaud"), Veterans Construction Group, LLC ("Veterans"), Andy Persaud, and Katherine Baradaran (collectively, "Defendants") have not filed a response to Hanover's motion and the deadline for a response has now passed. *See* Loc. R. 105.2(a). Having reviewed the filings, a hearing is unnecessary. *See* Loc. R. 105.6. For the reasons discussed more fully below, the Court will GRANT Hanover's Motion for Default Judgment.

**I.   BACKGROUND**

On September 19, 2007, Persaud contracted with the United States government to provide labor and materials for the renovation of the fifth floor of the Veteran's Affairs Medical Center ("the Medical Center") in Philadelphia, Pennsylvania. *See* ECF No. 32 at ¶ 13. On January 25, 2008, at Persaud's request, Hanover issued surety bonds – the Payment Bond and the Performance Bond – on Persaud's behalf for work to be performed at the Medical Center. *See id*

at ¶ 8. Under these bond agreements, Hanover assumed responsibility for Persaud's payments to various subcontractors and suppliers. *See id* at ¶¶ 14-15.

In partial consideration for Hanover issuing surety bonds on Persaud's behalf, on January 25, 2008, Persaud, Andy Persaud and Katherine Baradaran executed an Agreement of Indemnity in favor of Hanover. *See id.* at ¶ 8; *see also* ECF No. 32-1. On June 15, 2009, Veterans, as well as the other Defendants, executed a separate Agreement of Indemnity in favor of Hanover. *See* ECF No. 32 at ¶ 9; *see also* ECF No. 32-2. Under both of these agreements, Defendants agreed to indemnify Hanover for any damages, including attorneys' fees and costs, arising from the issuance of the Payment Bond and the Performance Bond. *See* ECF No. 32-1; *see also* ECF No. 32-2.

Persaud then contracted with various subcontractors and suppliers to provide work and materials for the Medical Center project. *See* ECF No. 32 at ¶ 15. Persaud, however, failed to pay certain subcontractors and suppliers. *See id*. Consequently, these unpaid subcontractors and suppliers asserted claims against Hanover's Payment Bond, including, the claims of Whitehall Manufacturing Co., Division of Acorn Engineering, Co., Westcott Electric Co., Revolutionary Recovery, LLC, and MEP Solutions, Inc. *See* ECF No. 50 at 3. Pursuant to its Payment Bond, Hanover was obligated to, and did, pay the following Persaud subcontractors and suppliers as follows: Whitefall Manufacturing Co., $8,408.16; Wescott Electric Co., $130,016.16; Revolution Recovery, LLC, $6,579.97; and MEP Solution, Inc., $115,000.00. *See id.* Thus, the total amount Hanover paid pursuant to the Payment Bond was $260,004.29.

On February 13, 2013, Hanover filed this action seeking contractual indemnification from Defendants in the amount $321,663.49, which included the $260,004.29 paid by Hanover to Persaud's subcontractors and suppliers, as well as $61,659.20 in attorneys' fees and costs.

Defendants, however, never filed an answer to Hanover's amended complaint.[1] Thus, on August 11, 2014, Hanover filed a Motion for Clerk's Entry of Default. *See* ECF No. 41. Defendants did not respond to Hanover's motion and the Clerk entered Defendants' defaults on September 10, 2014 and September 22, 2014. *See* ECF Nos. 47, 48. Hanover then filed a Motion for Default Judgment on December 4, 2014 (*see* ECF No. 49), which remains unopposed by Defendants. Having considered Hanover's motion and the attachments thereto, as well as its amended complaint, the Court will GRANT Hanover's Motion for Default Judgment.

## II.    DISCUSSION

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments. Pursuant to Rule 55(b), the Clerk may enter a default judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation . . . ." Fed.R.Civ.P. 55(b)(1). Here, Hanover seeks a default judgment against Defendants in the amount $321,663.49. The entry of default judgment is a matter within the discretion of the Court. *See SEC v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D. Md. 2002)). As the Court noted in *Disney Enterprises, Inc. v. Delane*, 446 F.Supp.2d 402 (D. Md. 2006), "[t]he United States Court of Appeals for the Fourth Circuit has a 'strong policy that cases be decided on the merits.'" *Id.* at 405 (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)). Nonetheless, "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Id.* (quoting *Lawbaugh*, 395 F.Supp.2d at 421).

In determining whether to award a default judgment, the Court takes as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages. *See Ryan v.*

---

[1] Defendant Baradaran did file an answer to the original complaint. *See* ECF No. 7.

*Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citation and internal quotation marks omitted)); *see* Fed.R.Civ.P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."). It remains, however, "for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action." *Agora Fin., LLC v. Samler*, 725 F.Supp.2d 491, 494 (D. Md. 2010); *see also* FED. PRAC. & PROC. § 2688 (3d ed. 1998) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the Court finds that "liability is established, [it] must then determine the appropriate amount of damages." *Samler*, 725 F.Supp.2d at 494 (citing *Ryan*, 253 F.3d at 780-81). This is so because "an allegation 'relating to the amount of damages' is not deemed admitted based on a defendant's failure to deny in a required responsive pleading." *Hartford Fin. Servs. Grp. Inc. v. Carl J. Meil, Jr., Inc.*, Case No. 10-2720, 2011 WL 1743177, at *7 (D. Md. May 5, 2011) (quoting Fed.R.Civ.P. 8(b)(6)); *see also Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, LLC*, Case No. 08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."); *Int'l Painters & Allied Trades Indus. Pension Fund v. Metro Glass & Mirror, Inc.*, Case No. 11-2389, 2012 WL 893262, at *2 (D. Md. Mar.14, 2012) ("The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.").

In sum, the Court must make two determinations. First, the Court must decide "whether the unchallenged facts in plaintiff['s] complaint constitute a legitimate cause of action[.]" *Samler*, 725 F.Supp.2d at 494. Second, if the Court finds that liability is established, it must "make an independent determination regarding the appropriate amount of damages." *Id.*

### A.      Liability

Hanover's amended complaint, as well as the attachments thereto, adequately demonstrates that Hanover is entitled to indemnification from Defendants for its losses associated with Persaud's default under the surety bonds.

A contract of suretyship is a three-party agreement between a bond principal (Persaud), an obligee (the subcontractors and suppliers) and the surety (Hanover). *See Institute of Mission Helpers of Baltimore City v. Reliance Ins. Co.*, 812 F. Supp. 72, 74 (D. Md. 1992). Under a surety bond arrangement, the surety provides security for the payment of a debt or performance of an obligation of another. *See Nat'l Union Fire Ins. Co. v. David A. Bramble, Inc.*, 879 A.2d 101, 107 (Md. 2005). In the event that the surety discharges the principal's obligations and an express indemnification contract exists, the surety is entitled to rely upon the "letter of the contract for indemnification." *Fidelity & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983). A broad indemnity provision will be upheld absent fraud or lack of good faith. *See id*.

Here, Hanover has attached exhibits to its Motion for Default Judgment indicating that it assumed and subsequently discharged Defendants' financial obligations to its subcontractors and suppliers. *See* ECF No. 50-5. Accordingly, Hanover is entitled to indemnification from Defendants, pursuant to their indemnification agreements which clearly and explicitly require the Defendants to "exonerate, indemnify, and save harmless [Hanover] from and against every

claim, demand, liability, cost, charge, suit, judgment and expense which [Hanover] may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees: (a) by having executed or procured the execution of the bonds." ECF No. 50-3; *see also* ECF No. 50-4; *see also, e.g.*, *Argonaut Ins. Co. v. Wolverine Const., Inc.*, 976 F. Supp. 2d 646, 657 (D. Md. 2013) (granting summary judgment for indemnification in favor of surety); *Berkley Reg'l Ins. Co. v. James T. Redding, Inc.*, Case No. 12-2578, 2014 WL 3898089, at *4 (D. Md. Aug. 8, 2014) (recommending issuance of default judgment in favor of surety for contractual indemnification against principal who defaulted in its performance under surety bond) (report and recommendation adopted, ECF No. 33).

### B.    Damages

With liability established, damages must now be addressed. "Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Trs. of the Elec. Welfare Trust Fund*, Case No. 08-2805, 2009 WL 2982951, at *1. "In some circumstances a district court entering a default judgment may award damages ascertainable from the pleadings without holding a hearing." *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 507 (4th Cir. 1998). Rule 55(b) authorizes the Court to do so if "plaintiff's claim is for a sum certain or a sum that can be made certain by computation" and when the plaintiff provides "an affidavit showing the amount due." Fed.R.Civ.P. 55(b)(1). *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, Case No. 6:09-00004, 2009 WL 1872535, at *2 (W.D. Va. 2009) ("no need to convene a formal evidentiary hearing on the issue of damages" when plaintiff provided sufficient evidence of damages through affidavit); *see also DirecTV, Inc. v. Yancey*, Case No. 404-11, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (hearing was unnecessary before entering default

judgment because plaintiff "presented sufficient evidence to support its claim for damages, costs and fees by way of uncontradicted affidavits").

Here, the Court need not hold a hearing as to Hanover's damages as that amount is easily ascertainable from Hanover's pleadings and exhibits. Specifically, in support of its indemnification claim, Hanover has submitted (1) the Payment Bond signed by Persaud and Hanover (*see* ECF No. 50-2 at 2-4); (2) the Performance Bond signed by Persaud and Hanover (*see id.* at 5-7) ; (3) the Indemnity Agreements between Hanover and Defendnats (*see* ECF Nos. 50-3, 50-4); (5) copies of checks submitted by Hanover to Persaud's subcontractors and suppliers (*see* ECF No. 50-5); and (6) affidavits from Hanover's in-house and outside counsel regarding attorneys' fees and costs (*see* ECF Nos. 50-1, 50-6). These documents demonstrate that Hanover is entitled to its requested $321,663.49.

First, Hanover has submitted checks that demonstrate that it is entitled to $260,004.29 for payments it made to Persaud's unpaid subcontractors and suppliers. *See* ECF No. 50-5. Specifically, Hanover paid $8,408.16 to Whitefall Manufacturing Co., $130,016.16 to Wescott Electric Co., $6,579.97 to Revolution Recovery, LLC, and $115,000.00 to MEP Solution, Inc. *See id.* Thus, Hanover is entitled to indemnification in the amount of $260,004.29 for payments it made to Persaud's subcontractors and suppliers.

Hanover also seeks $61,659.20 in attorneys' fees and costs, which are permitted under the indemnity agreements. *See* ECF No. 50-3 (permitting indemnification for attorneys' fees and costs); *see also* ECF No. 50-4 (same). Specifically, Hanover seeks $51,503.77 in attorneys' fees and costs for work performed by the law firm of Pike & Gilliss, $7,590.54 in attorneys' fees and costs for work performed by the law firm of Butler Pappas Weilhmuller Katz ("Butler Pappas"), $2,380 in costs from Kazlow & Fields, LLC, and $184.89 in costs from Ricoh USA, Inc.

Concerning the attorneys' fees, the Court has reviewed the hourly rates charged by the attorneys from Pike & Gilliss and has determined that, in light of their experience, their rates are reasonable. Specifically, Patrick Madigan and Eric Korphage have practiced law for twelve and fourteen years, respectively. Their hourly rates are $220 (*see* ECF No. 50-1), which fall within the guidelines of Appendix B to this Court's Local Rules for an attorney admitted to the bar for nine (9) to fourteen (14) years. Additionally, David Gilliss has practiced law for twenty years and charges an hourly fee of $245 (*see id.*), which also falls within the guidelines of Appendix B for an attorney admitted to the bar for twenty years or more. The Court therefore finds the rates charged by Pike & Gilliss to be reasonable. The Court has also reviewed the number of hours worked by Pike & Gilliss on this matter. From December 19, 2012 through August 29, 2014, these attorneys billed 327.8 hours on this matter. Given the facts and circumstances presented by this case, the Court finds the number of hours spent on this matter to be reasonable. As such, the Court will grant Hanover's request for attorneys' fees for the work performed by the law firm of Pike & Gilliss in the amount of $51,503.77.

Hanover also seeks $7,590.54 in attorneys' fees and costs for work performed by the law firm of Butler Pappas, who served as Hanover's local counsel. Again, the Court has reviewed the hourly rates charged by the attorneys from this firm and has determined that, in light of their experience, their rates are also reasonable. Specifically, Thomas Coleman, who has practiced law for twelve years, has an hourly rate of $240, which falls within the guidelines of Appendix B for an attorney admitted to the bar for nine (9) to fourteen (14) years. Additionally, the $120 hourly rates for Jenna Stavros and Nicole O'Neil also fall within the guidelines of Appendix B for attorneys admitted to the bar for less than five years. The Court therefore finds the rates charged by Butler Pappas to be reasonable. The Court has also reviewed the number of hours worked by

Butler Pappas on this matter. Specifically, these attorneys billed 31.7 hours on this matter from January 18, 2013 through March 10, 2014. Again, the Court finds that the number of hours dedicated to this matter to be reasonable in light of the facts and circumstances presented by this case. As such, the Court will grant Hanover's request for attorneys' fees and costs associated with the work performed Butler Pappas in the amount of $7,590.54.

Additionally, Hanover seeks $2,380 in costs associated with work performed by the firm of Kazlow & Fields, LLC, who was retained to analyze the assets and liabilities of Defendants in connection with their obligations under the Payment Bond. And finally, Hanover seeks $184.89 in costs for litigation expenses from Ricoh USA, Inc., for copy costs incurred in connection with a lawsuit that MEP Solutions, Inc. filed against Hanover relating to Defendants' failure to pay MEP Solutions. Having reviewed the invoices associated with these charges, as well as having considered their relevance, the Court finds these expenses to be reasonable. The Court will therefore award Hanover $2,380 for the work performed by Kazlow & Fields, LLC, as well as $184.89 for the work performed by Ricoh USA, Inc.

## III.    CONCLUSION

For the reasons explained above, Hanover's Motion for Default Judgment, ECF No. 49, will be **GRANTED**. As such, Judgment is **ENTERED** in favor of Plaintiff, The Hanover Insurance Company, against Defendants Persaud Companies, Inc., Veterans Construction Group, LLC, Andy Persaud and Katherine Baradaran jointly, severally, and individually in the amount of $321,663.49, plus pre-judgment interest from the date Plaintiff's action was filed and post-judgment interest at the applicable legal rate. A separate Order shall issue.

Dated: <u>July 22, 2015</u>                    <u>            /S/            </u>
                                               George Jarrod Hazel
                                               United States District Judge